IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINA L. LINNABARY,

          Plaintiff,

    v.

SEQUIUM ASSET SOLUTIONS, LLC,

          Defendant.

2:22-CV-01565-CCW

## OPINION

Before the Court are cross-motions for summary judgment filed by Plaintiff Christina L. Linnabary, ECF No. 49, and Defendant Sequim Asset Solutions, LLC ("SAS"), ECF No. 46, as well as supplemental briefing on Article III standing, ECF Nos. 61, 62.

Ms. Linnabary asserts that SAS, a debt collector, improperly attempted to collect a debt and misrepresented the amount she owed, in violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and several Pennsylvania state laws.[1] *See generally* ECF No. 26. Following discovery, the parties filed cross-motions for summary judgment. ECF Nos. 46, 49. After a Court order requesting additional briefing on Article III standing, ECF No. 60, the parties filed supplemental briefs both arguing that Ms. Linnabary had Article III standing to bring her claims. ECF Nos. 61, 62.

For the reasons set forth below, the Court determines that Ms. Linnabary has standing to bring two of her FDCPA claims but will **REMAND** her third claim for lack of standing.

---

[1] Ms. Linnabary brings claims under the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, and the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1.

Additionally, the Court will **GRANT** SAS' Motion for Summary Judgment and **DENY** Ms. Linnabary's Motion for Summary Judgment on the two remaining FDCPA claims.

## I.   Background

On February 2, 2023, Ms. Linnabary filed an Amended Complaint against SAS, alleging that SAS violated the Fair Debt Collection Practices Act and Pennsylvania state law when it attempted to collect a debt she allegedly owed.[2] *See generally* ECF No. 26.  Ms. Linnabary asserts three FDCPA claims:  first, that SAS violated § 1692e(2)(A) because it misrepresented the amount of debt Ms. Linnabary owed;  second, that SAS violated § 1692g(b) because it restarted collection activity prior to sufficiently validating the debt;  and third, that SAS violated § 1692f because it sent its debt validation response to Ms. Linnabary's secondary email address rather than her primary email or via United States mail.  ECF No. 26 ¶¶ 24–33.

The following facts are undisputed unless otherwise noted.

On January 27, 2022, Ms. Linnabary's Verizon account was placed with SAS for collection.  ECF No. 49-4 ¶ 1;  ECF No. 48 ¶ 1;  ECF No. 46, Ex. E.  SAS then sent Ms. Linnabary a letter (the "Collection Letter"), dated January 28, 2022, requesting that she pay the debt.  ECF No. 46, Ex. D;  ECF No. 48 ¶ 9.  The Collection Letter identified SAS as the debt collector and explained that the "total amount of the debt now" is $22.95.  *Id.*  The Collection Letter also stated that as of October 17, 2021, Ms. Linnabary owed $271.34.  *Id.*  The Collection Letter further noted that between October 17, 2021 and the date the letter was sent, Ms. Linnabary was charged $248.39 in interest, $0.00 in fees, and she paid or received credits of $0.00, for a total of $22.95.  *Id.*  The

---

[2] On August 29, 2022, Ms. Linnabary initiated this case in the Court of Common Pleas of Westmoreland County, Pennsylvania.  ECF No. 1 ¶ 1.  On November 3, 2022, the case was removed to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1441 and 1446.  *See generally* ECF No. 1.

Collection Letter further informed Ms. Linnabary that she had until March 14, 2022 to dispute all or part of the debt. *Id.*

On February 11, 2022, Ms. Linnabary sent an email to SAS, requesting that it verify the debt. ECF No. 49-4 ¶ 2; ECF No. 48 ¶ 2; ECF No. 49, Ex. C. In her email (the "Verification Request Email"), Ms. Linnabary noted that the Collection Letter said she owed $22.95 to Verizon, but she contended that she had already closed and paid her Verizon account in full. ECF No. 49, Ex. C. On February 12, 2022, Ms. Linnabary sent a letter via U.S. mail, also requesting debt verification. ECF No. 49-4 ¶ 2; ECF No. 48 ¶ 2; ECF No. 49, Ex. B.

On April 22, 2022, SAS responded to Ms. Linnabary's Verification Request Email with an email (the "Verification Response Email"). ECF No. 49-4 ¶ 3; ECF No. 48 ¶¶ 3, 4. SAS sent its Verification Response Email to an email address owned by Ms. Linnabary[3]—although it was a different email address than Ms. Linnabary used to request the verification. ECF No. 48 ¶ 4; ECF No. 49-4 ¶ 4.

SAS' Verification Response Email stated that the final bill was $22.95. ECF No. 48 ¶ 9; ECF No. 49-4 ¶ 6. It then advised that Ms. Linnabary may pay the debt online and that this email "is an attempt to collect a debt. Any information obtained will be used for that purpose." ECF No. 46, Ex. C; ECF No. 49, Ex. D. The email further noted that attached was a series of account statements from Verizon which "include[d] detailed information." ECF No. 46, Ex. C; ECF No. 48 ¶ 3; ECF No. 49, Ex. D; ECF No. 49-4 ¶ 5. The attached Verizon account statements showed

---

[3] The parties have slightly different descriptions of the email address to which SAS sent its verification. Ms. Linnabary describes it as "a secondary email address," in her Concise Statement of Facts. ECF No. 49-4 ¶ 4. SAS avers in its Concise Statement of Fact that it sent verification documents to an email address "Ms. Linnabary admits belongs to her." ECF No. 48 ¶ 4. The Court does not view this difference to be material, because even Ms. Linnabary's description acknowledges that the email address belonged to her, even if it was not, in her view, her primary email address. And in any event, the Court deems Defendant's version of this fact to be admitted, because Ms. Linnabary failed to submit a Response to SAS's Concise Statement of Facts. Per Local Rule 56, where a party does not file a responsive concise statement of facts, the opposing party's statement of facts are deemed admitted. Accordingly, the Court will treat SAS's description of this fact as admitted.

Ms. Linnabary's monthly Verizon balance from May 2021 to September 2021, with an ending balance of $271.34.  ECF No. 46, Ex. C;  ECF No. 49, Ex. D.

The parties have now filed cross motions for summary judgment.  SAS contends that it correctly represented the amount of debt owed, sufficiently validated the debt prior to restarting collecting activity, and properly responded to Ms. Linnabary's validation requests by using an email address she owned.  ECF No. 46 at ¶¶ 2–4.  Ms. Linnabary cross-moves for summary judgment, countering that SAS misrepresented the amount of debt she owed, failed to properly validate the debt, and used an unfair method of debt collection.  ECF No. 49 at ¶¶ 5, 6.

## II.    Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).  Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden

on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87 (internal quotation marks omitted) (finding that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."). Thus, while "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). But while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal quotation marks omitted). Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up).

"Where, as here, cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184, 2020 WL 2404904, at *3 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

III.    **Legal Analysis**

The Court will first determine whether Ms. Linnabary has Article III standing for each of her claims.  The Court finds that Ms. Linnabary has Article III standing to bring two of her three FDCPA claims, but that SAS is entitled to summary judgment on those claims.

A.      **Standing**

1.      **Legal Standard**

Both parties assert that Ms. Linnabary has Article III standing to bring this case.  ECF Nos. 61, 62.  A plaintiff has standing when she has suffered an injury-in-fact that is fairly traceable to the challenged conduct and capable of being redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992));  *see also Kelly v. RealPage, Inc.*, 47 F.4th 202, 211 (3d Cir. 2022).  "The party invoking federal jurisdiction bears the burden of establishing [Article III standing]."  *Lujan*, 504 U.S. at 561; *Butela v. Midland Credit Manag.*, 341 F.R.D. 581, 588 (W.D. Pa. 2022) (Stickman, J.) (finding that the defendant had the burden of establishing Article III standing because the defendant invoked federal jurisdiction by removing the case from federal court).

To prove standing at the summary judgment stage, a party "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts establishing standing." *Greenberg v. Lehocky*, 81 F.4th 376, 384 (3d Cir. 2023);  *see also Sierra Club v. GenOn Power Midwest LP*, No. 19-1284, 2021 WL 4171748, at *5–6 (W.D. Pa. Sep. 14, 2021) (Stickman, J.) ("At the summary judgment stage, the party with the burden of proving standing must show that there is a genuine issue of material fact as to the standing elements.");  *PennEnvironment, Inc. v. U.S. Steel Corp.*, No. 19-484, 2022 WL 973706, at *10–12 (W.D. Pa. Mar. 31, 2022) (Hardy, J.) (looking beyond the complaint to determine if standing existed at the summary judgment stage).

6

Here, SAS has the burden of proving Article III standing because it removed the case from state court to federal court. *See* ECF No. 1. The standing doctrine, in Article III, section 2 of the Constitution, limits the judicial power of the United States to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). Thus, federal courts may "resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Assn.*, 139 S. Ct. 2067, 2103 (2019)). A "real controversy" exists where the plaintiff (1) has suffered an "injury in fact," (2) that is "fairly traceable" to the defendant's challenged conduct, and (3) is "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction over the matter. *Lujan*, 504 U.S. at 560–62.

The question here revolves around the injury-in-fact requirement. An injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338 (cleaned up). To satisfy this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Furthermore, regarding the concrete-harm requirement, the plaintiff must have suffered an injury that bears a "close relationship to a harm traditionally recognized as a providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (internal quotations omitted). Some tangible harms, such as physical injuries or monetary losses, "readily qualify as concrete injuries." *Id.* at 425. Intangible harms can also qualify as concrete injuries. *Id.* Generally, intangible harms must be closely related to traditional harms, such as reputational harms, disclosure of private information, and intrusion upon seclusion, to qualify as concrete injuries under Article III. *Id.* Therefore, a party invoking federal jurisdiction must show there is a "close historical or common-law analogue" to the harm, although

an "exact duplicate" is not required. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 147–48 (3d Cir. 2023). Furthermore, not only must there be a statutory analogue, but the plaintiff's harm must bear "a sufficiently close relationship to *the harm* from [that common-law action]." *Id.* (emphasis in original).

One type of intangible harm, an informational injury, is excepted from the requirement that it be related to a traditionally recognized harm. *Id.* at 145. An informational injury exists where the plaintiff was denied information to which she was legally entitled, and the denial caused adverse consequences related to the purpose of the statute. *Kelly*, 47 F.4th at 212. To constitute an informational injury, there must be an outright omission of information; unclear or ineffective disclosures do not create an injury. *Huber*, 84 F.4th at 146 (finding no informational injury where the debtor disclosed the amount of debt owed); *see also TransUnion*, 594 U.S. at 440–42 (finding no informational injury where a credit reporting agency omitted certain required information in its initial mailings to plaintiff but later sent the required information in a separate mailing).

## 2. Article III Standing Exists for Some, But Not All, of Ms. Linnabary's FDCPA Claims

Ms. Linnabary's first FDCPA claim asserts that SAS violated § 1692e by misrepresenting the amount of debt owed when they listed a debt of $22.95 but attached account statements showing a higher balance. ECF No. 49-1 at 7–8. The Court agrees with the parties that Ms. Linnabary has Article III standing for this claim. Courts have found that claims for misleading communications under the FDCPA are related to the historical tort of fraudulent misrepresentation. *Huber*, 84 F.4th at 148. But to establish standing, the mere showing of a deceptive or misleading communication is insufficient; instead, there must be "some cognizable harm that flows from that confusion." *Id.* at 149. Such harm can include "physical, monetary, or cognizable intangible harm" or "reputational or emotional harm." *Id.* at 148. Here, in response to Ms. Linnabary's

request for debt verification, SAS sent her an email stating she owes $22.95 but it attached account statements showing a balance of $271.34.  ECF No. 49-4 ¶¶ 3, 5, 6.  In addition, Ms. Linnabary testified that she experienced harm flowing from this communication, including failing to pay the debt or take appropriate action, suffering from emotional distress, feeling extremely upset, fighting with her spouse, losing time, and purchasing Tylenol.  ECF No. 46, Ex. G at 35:23–41:18. Furthermore, the harm from the Collection Letter is traceable to SAS' conduct and would be redressable by this Court's decision.  Therefore, the Court finds that Ms. Linnabary has Article III standing for her § 1692e FDCPA claim.

Ms. Linnabary's second FDCPA claim asserts that SAS violated § 1692g because it restarted collection activity in its Verification Response Email but failed to provide information that sufficiently validated the debt.  ECF No. 49-1 at 4–6.  Ms. Linnabary contends that SAS did not sufficiently validate the debt because the account statements they sent her did not contain information showing she owed $22.95, instead the statements showed a total amount of $271.34. ECF No. 49-1 at 4–5.  The Court agrees with the parties that Ms. Linnabary has Article III standing for this claim because the evidence before the Court is sufficient to establish an informational injury.  Ms. Linnabary requested validation of the debt, so she was legally entitled to receive information that confirmed she owed $22.95.  15 U.S.C. § 1692g(b) (requiring debt collectors to cease collection activity and to verify the debt if a consumer requests validation within thirty days of receiving the collection notice).  In response to her request, SAS sent an email stating that the final amount owed was $22.95, but it attached account statements containing a total balance of $271.34.  ECF No. 48 ¶ 3;  ECF No. 49-4 ¶¶ 3, 5, 6.  Ms. Linnabary alleges that this information was insufficient to validate the debt because it did not include an explanation of how her Verizon account statements totaled $22.95.  ECF No. 49-1 at 5.  Because Ms. Linnabary believed the

validation was insufficient, she did not pay the debt or take other appropriate action while she waited for proper validation.  ECF No. 46, Ex. G at 35:35–42:1.  Ms. Linnabary testified that while waiting for proper validation, she suffered from emotional distress and a decrease in her credit score.  ECF No. 46, Ex. G at 40:18–41:7.  Therefore, Ms. Linnabary has suffered an informational injury because she was harmed when she allegedly did not receive information sufficient to verify the debt.  Finally, the alleged harm is fairly traceable to SAS' conduct and redressable by this Court's decision.  Therefore, Ms. Linnabary has Article III standing to bring her § 1692g claim.

Finally, Ms. Linnabary's third FDCPA claim alleges that SAS violated § 1692f because it engaged in unfair collection practices when it sent debt verification to an email Ms. Linnabary owns but claims is a secondary email.  ECF No. 49-1 at 6–7.  The Court disagrees with the parties and finds that Ms. Linnabary does not have Article III standing to bring this claim because she has not suffered a concrete injury.  An informational injury cannot exist where the plaintiff actually received the information, even if the manner was allegedly confusing or ineffective.  *Huber*, 84 F.4th at 145.  Here, after Ms. Linnabary requested debt verification, SAS responded by email.  ECF No. 48 ¶ 4;  ECF No. 49-4 ¶ 4.  The email address SAS responded to is owned by Ms. Linnabary but is different than the email address she used to request verification.  ECF No. 48 ¶ 4;  ECF No. 49-4 ¶ 4.  Ms. Linnabary contends that SAS was required to respond either by mail or by the same email address she used to request verification.  ECF No. 49-1 at 7.  By using a different email address, she asserts that SAS engaged in unfair collection practices in violation of § 1692f because the manner in which she received the debt validation—through a secondary email—was confusing.  ECF No. 49-1 at 6–7.  The Court concludes that no informational injury exists for this claim because Ms. Linnabary is merely alleging that the way she received the debt verification— through a secondary email—was confusing.  *See TransUnion*, 594 U.S. at 441 (finding there is no

informational injury where the plaintiff merely alleges that she received the information in the wrong format—not that she failed to receive the information).  Further, under this claim, there is no evidence that SAS' use of Ms. Linnabary's secondary email resulted in her not receiving the requested verification information.  Finally, traditional Article III standing does not exist;  neither party has pointed to a common-law historical analogue to the harm Ms. Linnabary alleges here. *See generally* ECF Nos. 61, 62.  Therefore, SAS, the party invoking federal jurisdiction, has failed to show that Ms. Linnabary suffered a concrete injury when SAS sent debt validation to her secondary email.  Accordingly, Ms. Linnabary does not have standing to bring her § 1692f claim, and pursuant to 28 U.S.C. § 1447(c), the Court will **REMAND** this claim.

> ## B.    SAS is Entitled to Summary Judgment on Remaining FDCPA Claims

Having determined that Article III standing exists for two of Ms. Linnabary's FDCPA claims, the Court now turns to the merits of those claims.  In her Motion for Summary Judgment, Ms. Linnabary contends that SAS violated the FDCPA because it misrepresented the amount owed by attaching account statements with a higher total than the debt, and it restarted collection activity in its Verification Response Email prior to adequately validating the debt.  ECF No. 49-1 at 4–8. In its Motion, SAS asserts that it accurately represented the amount owed and appropriately validated the debt before restarting any collection activity.  ECF No. 47 at 6–11.

> ### 1.    Legal Standard

To succeed on her remaining FDCPA claims, Ms. Linnabary must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *Huber*, 84 F.4th at 150 (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).  Only the fourth prong, for purposes of the parties' Motions, is disputed.  *See generally* ECF Nos. 46, 49.

"Because the FDCPA is a remedial statute…we construe its language broadly, so as to effect its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citations omitted). Accordingly, "lender-debtor communications potentially giving rise to claims under the FDCPA…[are] analyzed from the perspective of the least sophisticated debtor." *Id.* at 454 (applying the least sophisticated debtor standard to a FDCPA claim under § 1692e); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (applying the same standard to § 1692g). "This standard ensures protection of all consumers, both gullible and shrewd." *Elnaggar v. Allard*, No. 22-2316, 2023 WL 3597381, at *2 (3d Cir. May 23, 2023); *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018). Applying this standard "requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Brown*, 464 F.3d at 454 (quoting *Quadramed*, 225 F.3d at 354).

The least sophisticated debtor standard is objective, *see Tatis*, 882 F.3d at 427, and, although it sets a lower bar than one based on a "reasonable debtor," it nevertheless "preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)) (cleaned up). "Thus, although this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices.'" *Quadramed*, 225 F.3d at 354 (quoting *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996)). Finally, "[w]hether a collection letter violates the FDCPA is a question of law." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (analyzing alleged violations of Sections 1692(e) and (g)).

The Court will first address SAS' Motion and will then turn to Ms. Linnabary's Motion. In addressing SAS' Motion, the Court will view the facts in the light most favorable to Ms. Linnabary, the non-moving party.  *See Burton*, 707 F.3d at 425.

### 2. SAS Has Not Misrepresented the Amount of Debt that Ms. Linnabary Owed under Section 1692(e)

SAS asserts that its initial Collection Letter, dated January 28, 2022, and Verification Response Email, dated April 22, 2022, both correctly and clearly identified the amount of debt Ms. Linnabary owed—$22.95.  ECF No. 47 at 10;  ECF No. 46, Exs. C, D.  In response, Ms. Linnabary contends that SAS misrepresented the debt owed because it attached account statements with a balance of $271.34, making the amount owed misleading.  ECF No. 52 at 8–9.

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "the false representation of the character, amount, or legal status of any debt."  15 U.S. § 1692e(2)(A).  "[D]ebt collectors who make demands for payments must accurately state the amount due in the Notice letter."  *Muir v. AM Solutions, LLC*, No. 18-729, 2019 WL 3530521, at *12 (E.D. Pa. Aug. 1, 2019) (finding plaintiffs had sufficiently stated a FDCPA claim that where the collection letter misrepresented the amount owed based on the mortgage terms).  A debt collector "misrepresents the amount of the debt in violation of § 1692e(2)" when "the amount actually owed as of [the collection letter] date was less than the amount listed."  *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014).

SAS' Collection Letter stated, "Total amount of the debt now:  $22.95."  ECF No. 49, Ex. B at 3;  ECF No. 46, Ex. D at 1.  Although the Collection Letter also listed a larger amount of $271.34, it represented that this debt was owed as of October 17, 2021—approximately three months prior.  *Id.*  Therefore, the Court finds that the least sophisticated debtor would understand

this Collection Letter to unambiguously represent that the total amount of debt owed is $22.95. *Compare Huber*, 84 F.4th at 150–52 (holding that a collection letter would have misled the least sophisticated debtor where the letter listed an "Amount" and "Various Other Accounts Total Balance" making it unclear which stated amount was the amount owed) *with Velez-Aguilar v. Sequium Assest Solutions LLC Inc.*, No. 22-1109, 2023 WL 1793885, at *3 (3d Cir. Feb. 7, 2023) (affirming that the least sophisticated debtor would not have been misled where the collection letter included only one numerical figure which stated the "Total Due").

SAS' Verification Email further confirmed a final bill of $22.95. ECF No. 46, Ex. C; ECF No. 49, Ex. D. Although the Verification Email refers to additional amounts in the attached account statements, *see* ECF No. 49-4 ¶ 6, the Court determines that because both the body of the Collection Letter and Verification Email make clear that the amount due is $22.95, the least sophisticated debtor would understand that to be the debt owed. Furthermore, neither the Collection Letter nor the Verification Email states an amount owed to SAS higher than $22.95 nor indicates an attempt to artificially inflate the amount owed. *See Muir*, 2019 WL 3530521, at *12 (analyzing only the collection letter itself to see if it accurately stated the amount owed); *Martsolf v. JBC Legal Group, P.C.*, No. 1:04-cv-1346, 2008 WL 275719, at *7 (M.D. Pa. Jan. 30, 2008) (finding that the collection letters "do not artificially inflate either the amount of the debt or the service fee, do not seek to collect any amounts extraneous to the debt. Therefore, the letters do not misrepresent the amount due in violation of § 1692e(2)(A).").

Accordingly, the Court will **GRANT** summary judgment on the § 1692e claim in favor of SAS.

> **3.      SAS Sufficiently Verified Ms. Linnabary's Debt and Did Not Engage in Improper Collection Activity under Section 1692g(b)**

In its Motion, SAS contends that it did not violate § 1692g(b) because it sent sufficient information to validate Ms. Linnabary's debt in its Verification Response Email and did not restart collection activity prior to that. ECF No. 46 at 7–9. Ms. Linnabary disagrees, asserting that the Verification Response Email restarted collection activity by requesting payment of the debt and listing different payment methods. ECF No. 49-1 at 4. Further, Ms. Linnabary maintains that SAS insufficiently verified the debt because it claimed the debt owed was $22.95 but attached account statements showing a total of $271.34. ECF No. 52 at 6–8.

Section 1692g states that if a debtor disputes the amount owed in writing, within 30 days of receiving notice, then the debt collector "shall cease collection of the debt… until the debt collector obtains verification of the debt…" 15 U.S.C. § 1692g(b). Although § 1692g does not explain what is required to verify a debt, district courts within our Circuit have held that "the requirements are minimal." *Campbell v. LVNV Funding, LLC*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022); *Myers v. Midland Credit Management, Inc.*, No. 13-2455, 2014 WL 981311, at *5 (M.D. Pa. Mar. 13, 2014) (finding that debt verification "involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.").

Moreover, the Third Circuit has found sufficient verification where the debtor was informed of "the amounts of [her] debts, the services provided, and the dates on which the debts were incurred." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) *overruled on other*

15

grounds by *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020); *Jarzyna v. Home Properties, L.P.*, 114 F.Supp.3d 243, 262–63 (E.D. Pa. 2015) (finding sufficient verification where the debt collector sent a detailed statement explaining the charges underlying the debt); *see also Campbell*, 2022 WL 6172286, at *7 (finding sufficient debt verification where the debt collector provided an account summary report showing the debt balance, the current account information, the dates on which the debt occurred, and the debtor's name and address).

Here, SAS informed Ms. Linnabary of the debt amount, services provided, and dates the debts were incurred:  SAS confirmed in the text of the Verification Email that the final amount of Ms. Linnabary's debt was $22.95, it attached account statements from Verizon showing that cellphone plans were provided, and it listed unpaid monthly balances from May to September 2021.  ECF No. 48 ¶¶ 3, 9;  ECF No. 49-4 ¶¶ 3, 6;  ECF No. 46, Ex. C.  And although the Verizon statements had a larger total balance, the Court finds that SAS sufficiently informed Ms. Linnabary of the total debt she owed;  it was not required to show detailed files of the debt, bills, or other evidence. *See Myers*, 2014 WL 981311, at *5.  Therefore, the Court finds that SAS sufficiently validated the debt in its Verification Response Email, and to the extent that SAS' Email restarted collection activity, the Court finds it is immaterial because SAS had already provided sufficient verification.

Accordingly, the Court will **GRANT** summary judgment on the § 1692g claim in favor of SAS.

### 4.    Ms. Linnabary's Motion for Summary Judgment Will be Denied

The Court will now turn to Ms. Linnabary's Cross-Motion for Summary Judgment.  ECF No. 49.  Ms. Linnabary moved for summary judgment on the same legal issues as SAS.  *See*

*generally* ECF No. 49-1.  Because the Court has found no genuine issues of material fact, and that SAS is entitled to summary judgment, Ms. Linnabary's Motion must necessarily be denied.

       **C.**     **The Court Declines to Exercise Supplemental Jurisdiction over Ms. Linnabary's State-Law Claims**

Ms. Linnabary also brings two state-law claims:  one under the Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.4, and one under the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201.  Because Ms. Linnabary's FDCPA claims are the only federal claims in the Amended Complaint, *see* ECF No. 26, and the Court has granted summary judgment on all federal claims which Ms. Linnabary has standing to bring, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction").  Therefore, the Court declines to exercise supplemental jurisdiction over Ms. Linnabary's FCEUA and UTPCPL claims and will **REMAND** those claims to state court.

**IV.**    **Conclusion**

For the foregoing reasons, Ms. Linnabary's § 1692f claim under the FDCPA is **REMANDED** for lack of Article III standing.  Further, SAS' Motion for Summary Judgment is **GRANTED** with respect to the § 1692e § 1692g FDCPA claims and Ms. Linnabary's Motion for Summary Judgment is **DENIED** as to those claims.  Accordingly, Ms. Linnabary's §§ 1692e and 1692g claims under the FDCPA are **DISMISSED** with prejudice.  Finally, because the Court declines to exercise supplemental jurisdiction over Ms. Linnabary's related FCEUA and UTPCPL claims, they are **REMANDED** to state court.

DATED this 2nd day of February, 2024.

                              BY THE COURT:


                              /s/ Christy Criswell Wiegand
                              CHRISTY CRISWELL WIEGAND
                              United States District Judge


cc (via ECF email notification):

All Counsel of Record